# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Lorenzo C. Haynes,<br><br>             Plaintiff,<br><br>v.<br><br>Samuel Iten, Correctional Officer; Ken Guggisberg, Sgt. Correction Officer; Nola Karow, Health Service Administrator-Faribault; Jeffrey Felt, M.D., Physician; Diane Dau, Health Service Administration-Stillwater; Brent Plackner, P.A., Physician's Assistant; and Daryl Quiram, M.D., Physician, being sued in their individual and official capacities acting under color of state law,<br><br>             Defendants. | Case No. 17-cv-5217 (DSD/HB)<br><br><br>**REPORT AND RECOMMENDATION** |

Lorenzo C. Haynes, Minnesota Correctional Facility–Faribault, 1101 Linden Ln, Faribault, MN 55021, *pro se*

Jeffrey Kent Boman, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1800, Saint Paul, MN 55101, for Samuel Iten, Ken Guggisberg, Diane Dau, and Nola Karow

HILDY BOWBEER, United States Magistrate Judge

       This matter is before the Court on the Motion to Dismiss filed by Defendants Samuel Iten, Ken Guggisberg, Nola Karow, and Diane Dau (hereinafter referred to collectively as "DOC Defendants") [Doc. No. 30]. The DOC Defendants are employees of the Minnesota Department of Corrections ("DOC"). Plaintiff Lorenzo C. Haynes is a

1

prisoner at the Minnesota Correctional Facility in Faribault, MN. On December 1, 2017, Haynes filed the instant action asserting claims under 42 U.S.C. § 1983. He filed an Amended Complaint on December 1, 2017 [Doc. No. 5]. In particular, Haynes alleges that Defendants Karrow and Dau violated his civil rights by subjecting him to cruel and unusual punishment in violation of the Eighth Amendment, Defendants Iten and Guggisberg violated his civil rights by causing him to suffer significant injuries in prison on account of their gross negligence, and that all of the Defendants discriminated against him in violation of the Minnesota Human Rights Act and the Fourteenth Amendment to the United States Constitution. Haynes additionally asserts claims for medical malpractice against three medical providers at the prison that are not the subject of this motion to dismiss.

By this motion, the DOC Defendants assert the claims against them in Haynes' Amended Complaint should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) because Haynes' claims are barred by Eleventh Amendment immunity and fail to allege facts sufficient to state claims for which relief may be granted. For the reasons set forth below, the Court will recommend granting the motion in part and denying the motion in part.

## I.     Plaintiff's Allegations

Haynes' action arises out of an accident he suffered while in prison. (Am. Compl. ¶¶ 1-3, 42-55 [Doc. No. 5].) On October 21, 2016, Haynes slipped and fell down a flight of wet stairs and suffered serious injuries. (*Id.* ¶ 5.) Haynes alleges that Defendants Iten and Guggisberg, both corrections officers at the Minnesota Corrections Facility in

St. Cloud, Minnesota ("MCF-St. Cloud"), had the duty to ensure the safety of the inmate population on the day that he was injured. (*Id.* ¶ 14.) He alleges that Iten and Guggisberg breached that duty when they allowed the staircase to get wet, creating a dangerous condition. (*Id.* ¶ 14.) He also asserts that they failed to take reasonable precautions to mitigate the risk of injury when they did not place a "wet floor" sign near the staircase. (*Id.*)

A week after Haynes was injured, he underwent two X-ray examinations. The first X-ray revealed that Haynes had fractured his left fibula. (*Id.* ¶ 15.) The second X-ray was taken of his lower back in an attempt to assess the cause of pain he was experiencing in that region after the fall. (*Id.* ¶ 18.) On October 26, 2016, Haynes lodged a grievance with prison staff about the accident in which he appears to complain that he was patronized by a prison nurse for his condition. (*Id.* ¶ 16.) Believing he would not receive adequate medical care at MCF-St. Cloud in light of the patronizing comments, Haynes also wrote to Warden Carol Krippner on the same day to ask for a medical transfer to the Minnesota Correctional Facility in Oak Park Heights, Minnesota. (*Id.* ¶ 17.) That request was not granted, but he was later transferred to the Minnesota Correctional Facility in Faribault, Minnesota ("MCF-Faribault") on November 15, 2016. (*Id.* ¶ 19.)

Shortly after being transferred to MCF-Faribault, Haynes filed a grievance asserting that he was not receiving medical treatment for his injuries. (*Id.* ¶ 20.) A week later, on November 29, 2016, Defendant Dr. Jeffrey Felt, a physician at MCF-Faribault, visited with Haynes about his injuries and ordered another X-ray for his fractured left

fibula. (*Id.* ¶ 21.)  After eight days had passed, Haynes had not been informed about the results of his X-ray examination. (*Id.* ¶ 22.)  On December 7, 2016, he filed another grievance, complaining generally about the inadequate medical treatment he was being provided and requesting that medical staff consult with him about his injury. (*Id.* ¶ 22.)  On December 15, Haynes filed a grievance to complain that Defendant Karow, a health services administrator at MCF-Faribault, was not answering any of his kite requests regarding his inadequate medical treatment. (*Id.* ¶ 23.)  He also complained that he was improperly charged a co-pay for medical treatment relating to injuries he suffered at the prison. (*Id.* ¶¶ 15, 23.)  On December 20, Haynes filed another grievance expressing the same concerns. (*Id.* ¶ 25.)  Two days later, on December 22, 2016, Haynes was transferred to the Minnesota Correctional Facility in Stillwater, Minnesota ("MCF-Stillwater") without receiving any response to the grievances he filed while at MCF-Faribault. (*Id.* ¶ 26.)  Haynes asserts that Defendants Karow and Felt knew of his injuries but nevertheless refused to treat him while he was at MCF-Faribault. (*Id.*)

A week after being transferred to MCF-Stillwater, Haynes' leg was X-rayed for a third time, this time by Defendant Plackner, a physician's assistant at MCF-Stillwater. (*Id.* ¶¶ 12, 27.)  On January 5, 2017, Haynes finally received a response to the grievances he lodged while at MCF-Faribault, informing him he would be provided a follow-up medical appointment. (*Id.* ¶ 28.)  On January 12, 17, and 18, Haynes requested medical treatment for his left leg and lower back. (*Id.* ¶ 29.)  On January 19, Haynes sent a kite complaining that his left leg still felt disconnected at the ankle and that he continued to suffer from extreme lower back pain. (*Id.* ¶ 29.)  Two days later, Haynes wrote to

4

Defendant Dau, a health services administrator at MCF-Stillwater, to complain again that he was being charged a co-pay for the injury he suffered at the prison. (*Id.*¶¶ 11, 30.) On January 27, Defendant Plackner informed him that his leg would never be the same again. (*Id.* ¶ 31.)

Approximately six weeks later, Haynes sought recourse for his injury and subsequent medical treatment from the DOC Central Office. On March 16, 2017, he submitted what he characterizes as an "off-duty personal injury form" to Susan Norton, a paralegal at the DOC Central Office. (*Id.* ¶ 32.) On March 27, Haynes submitted a formal grievance about the inadequate medical treatment he was receiving for his injuries and the prison's continued insistence that he be charged a co-pay for his treatment. (*Id.* ¶ 33.) On April 12, 2017, Haynes again sought medical treatment for his injuries and was again directed to make a co-payment. (*Id.* ¶ 34.) On April 17, Jean Whitney, associate general counsel for the DOC, informed Haynes that his personal injury claim could not be handled through the administrative process because he was not injured while performing an assigned duty. (*Id.* ¶ 35.) However, on the same day, Defendant Dau informed Haynes that his co-payments would be refunded. (*Id.* ¶ 36.)

More than half a year after Haynes suffered his injury, he continued to experience pain related to it. On June 22, 2017, Haynes informed Defendant Quiram, a contract physician at MCF-Stillwater, that the medications he was prescribing were ineffective and that the pain had worsened in his lower back and left ankle. (*Id.* ¶¶ 13, 37.) Between July and October 2017, Haynes submitted several grievance letters to senior leadership at the DOC contending that Dau, Plackner and Quiram were deliberately indifferent to his

serious medical needs.  (*Id.* ¶ 38.)  Furthermore, on November 2, 2017, Haynes submitted a complaint to the Minnesota Board of Medical Practice asserting that Felt, Plackner, and Quiram fell short of meeting their professional obligations because they had been deliberately indifferent to Hayne's serious medical needs.  (*Id.* ¶ 39.)  On November 6, 2017, Haynes submitted a similar complaint to the Minnesota Board of Nursing asserting that Karow and Dau also fell short of meeting their professional obligations.  (*Id.* ¶ 40.)  Haynes still suffers pain from his injuries and he alleges he will continue to do so in the future because his injuries have become permanent due to Defendants' failure to provide him with timely and adequate treatment.   (*Id.* ¶ 41.)

By this suit, Haynes asserts the following claims for monetary relief.  First, Haynes alleges that Karow, Felt, Dau, Plackner, and Quiram acted with deliberate indifference to his medical needs in violation of the Eighth and Fourteenth Amendments.  (*Id.* ¶¶ 42-47.)  Second, Haynes alleges that Iten and Guggisberg were grossly negligent in failing to ensure that the prison staircase was in safe condition.  (*Id.* ¶¶ 48-51.)  Third, Haynes alleges that Felt, Plackner, and Quiram committed medical malpractice by providing him with inadequate medical treatment in response to the injuries he suffered after slipping and falling at the prison.  (*Id.* ¶¶ 52-53.)  Lastly, Haynes alleges that each of those Defendants violated the Minnesota Human Rights Act and the Fourteenth Amendment to the United States Constitution by discriminating against him.  (*Id.*¶¶ 54-55.)  His Amended Complaint asserts claims against them in both their official and individual capacities.  (Am. Compl. ¶¶ 7-13.)

## II.   Discussion

The DOC Defendants argue that Haynes' § 1983 claims against them in their official capacities are barred by Eleventh Amendment immunity, and therefore should be dismissed for lack of jurisdiction. They also argue that Haynes' § 1983 claims against them in their individual capacities should be dismissed because Haynes' fails to plead sufficient facts to state a claim for relief. The Court will consider each argument in turn.

### A.   Sovereign Immunity

The DOC Defendants argue that Haynes' § 1983 claims against them in their official capacities should be dismissed pursuant to the doctrine of sovereign immunity. When a state official is sued in her official capacity, the claim is treated as a claim against the state entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (stating the suit is not "against the official personally, for the real party in interest is the entity). Here, each of the moving Defendants is a DOC employee. Diane Dau is a health services administrator at MCF-Stillwater. Ken Guggisberg and Samuel Iten are correctional officers at MCF-St. Cloud. Nola Karow is a health services administrator at MCF-Faribault. Thus, the Court must consider official-capacity claims against these defendants as claims against the DOC.

The Eleventh Amendment provides "a state with immunity from suit in federal court by citizens of other states and by its own citizens." *Skelton v. Henry*, 390 F.3d 614, 617 (8th Cir. 2004). "A state agency or official may invoke the State's Eleventh Amendment immunity if immunity will 'protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the

7

State itself.'" *Hadley v. N. Ark. Cmty. Tech. Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 123 n.34 (1984)). The DOC is considered a state agency with Eleventh Amendment immunity. *See Grant v. City of Blytheville, Ark.*, 841 F.3d 767, 772 n.3 (8th Cir. 2016); *Carter v. CWF Sols., LLC*, No. 09-cv-16 (JMR/FLN), 2009 WL 512482, at *2 (D. Minn. Feb. 27, 2009).

Haynes seeks only monetary damages for his official-capacity claims against Dau, Guggisberg, Iten, and Karow. (Am. Compl. ¶¶ 2, 56-63.) Minnesota has not waived its Eleventh Amendment immunity from suit in federal court for § 1983 claims for damages, *see Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997), and Congress did not abrogate that immunity by enacting § 1983, *Quern v. Jordan*, 440 U.S. 332, 345 (1979). A claim barred by Eleventh Amendment immunity may be dismissed with prejudice. *See Brown v. Ark. Dep't of Human Servs.*, 452 F. App'x 690, 692–93, 2011 WL 1564022, at *1 (8th Cir. 2011); *Sorenson v. Minn. Dep't of Human Servs.*, No. 15-cv-1573(ADM/LIB), 2016 WL 5348574, at *3 (D. Minn. Sept. 23, 2016); *Cooper v. Minn. Dep't of Human Servs.*, No. 15-cv-2682 (JRT/JSM), 2016 WL 4179867, at *2 (D. Minn. Aug. 8, 2016). Accordingly, the Court recommends that the § 1983 claims for monetary damages against Dau, Guggisberg, Iten, and Karow in their official capacities be dismissed with prejudice.

### B.   Failure to State a Claim

The DOC Defendants also move to dismiss Haynes' § 1983 claims against them in their individual capacities pursuant to Federal Rule of Civil Procedure 12(b)(6). On such a motion, the Court "must take the well-pleaded allegations of the complaint as true, and

construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A court has the duty to construe liberally a pro se party's pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that even if a claim "is not pleaded with legal nicety," a court should construe the allegations so that the claim may "be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). The court should not, however, "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Id.* Nor should a court "assume the role of advocate." *Sneh v. Bank of N.Y. Mellon*, No. 12-cv-954 (MJD/JSM), 2012 WL 5519690, at *5 (D. Minn. Oct. 30, 2012) (quoting *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999)), *R. & R. adopted*, 2012 WL 5519682 (D. Minn. Nov. 14, 2012).

### 1. Gross Negligence Claims Against Iten and Guggisberg

Iten and Guggisberg argue that Haynes' § 1983 claims against them in their individual capacities should be dismissed for failing to state a claim, because Haynes' allegations of gross negligence do not state a constitutional violation. To state a claim under § 1983, a plaintiff must allege that a defendant "acted under color of state law, and

9

[ ] that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). "Simply put, a slip and fall, without more, does not amount to cruel and unusual punishment [and the] remedy for this type of injury, if any, must be sought in state court under traditional tort law principles." *Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004) (internal quotation marks omitted); *see also Christianson v. McLean Cty. Sheriff's Dep't*, No. 1:10-CV-058, 2010 WL 3421083, at *2 (D.N.D. Aug. 3, 2010) (collecting § 1983 cases alleging "slip and fall" injuries). Additionally, "a claim for simple negligence . . . do[es] not support the necessary constitutional injury so as to be redressable under Section 1983." *Andrewin v. Abraham,* No. CIV. 08-5866 DWF/JSM, 2009 WL 3428854, at *3 (D. Minn. Oct. 23, 2009).

Here, Haynes asserts that Iten and Guggisberg are liable under § 1983 because they were grossly negligent in failing to supervise or maintain the staircase at MCF-St. Cloud. In particular, Haynes asserts that Iten and Guggisberg had the duty to ensure that the staircase was in safe condition. He additionally asserts that Iten and Guggisberg breached that duty when they allowed the stairs to get wet on October 21, 2016, but did not place a "wet floor" sign at the staircase to warn persons to walk on them with caution. Haynes further asserts that he was injured as a result of that breach because the wet stairs caused him to slip and fall and suffer significant injuries. In other words, Haynes asserts allegations against Iten and Guggisberg that would supply the basis for a generic negligence claim under state law. *See Kellogg v. Finnegan*, 823 N.W.2d 454, 458 (Minn. Ct. App. 2012) (noting the four elements of a negligence claim are the existence of a duty

10

of care, a breach of that duty, an injury, and proximate cause.)  But Haynes does not claim, or allege facts that would support a claim, that Iten and Guggisberg's conduct, however negligent, deprived him of a constitutionally-protected federal right.  The "Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss." *Daniels v. Williams*, 474 U.S. 327, 328 (1986).  "[M]ere negligence does not violate the Eighth Amendment." *Standish v. Bommel*, 82 F.3d 190, 191 (8th Cir. 1996).  Accordingly, the Court will recommend that Haynes' gross negligence-based § 1983 claims against Iten and Guggisberg in their individual capacities be dismissed with prejudice.

### 2. Deliberate Indifference to Medical Needs Claims Against Karow and Dau

Karow and Dau also move to dismiss Haynes' § 1983 claims against them in their individual capacities on the grounds that Haynes has not pled facts that would support a deliberate indifference claim under the Eighth Amendment.  The Eighth Amendment prohibits the government from inflicting cruel and unusual punishments and "embodies broad and idealistic concepts of dignity . . . against which we must evaluate penal measures." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation marks omitted).  "[T]he unnecessary and wanton infliction of pain" is a punishment that offends the Eighth Amendment. *Estelle*, 429 U.S. at 102-03.  In the context of prison medical care, unnecessary and wanton infliction of pain occurs where a prison official acts with deliberate indifference to a prisoner's serious medical need. *Id.* at 104.  A prison official acts with deliberate indifference when "the official actually knows of and disregards a

prisoner's serious medical needs." *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir.1995). Thus, "[i]n a deprivation of medical care case, the inmate must show an objectively serious medical need," meaning one that "either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'" *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008) (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir.1995)). The inmate must also show that "the defendants actually knew of the medical need" yet deliberately disregarded it. *Jones*, 512 F.3d at 481. Under those circumstances, a prisoner may obtain recourse against the prison official under § 1983 for violating his right to be free from cruel and unusual punishment. *Id.* at 482.

Here, Karow and Dau argue that Haynes' deliberate indifference claim falls short because he does not allege he was actually denied medical treatment. The Eighth Amendment's proscription on cruel and unusual punishment requires prison officials to provide medical care to inmates, but it "does not require that medical care be provided at no cost." *Blaise v. McKinney*, 187 F.3d 640 (8th Cir. 1999) (unpublished opinion); *see also Reynolds v. Wagner*, 128 F.3d 166, 173-174 (3d Cir.1997). Defendants note that Haynes asserts throughout his Amended Complaint that prison officials improperly charged him a co-pay in connection with the medical treatment he received to address his broken leg and injured back, but that he does not allege that he was ever denied medical treatment on account of his failure to pay. To the contrary, they argue, Haynes concedes that he received medical care at each of the three DOC facilities in which he stayed—specifically, that he was examined by at least three medical professionals and received

four different X-ray examinations to assist in the diagnosis of his leg and back injuries. (Am. Compl. ¶¶ 15, 18, 21, 31, 37.)  Therefore, Defendants assert that Haynes fails to state a claim for deliberate indifference because he does not claim he was actually deprived of medical treatment at any of the prison facilities.  At most, Defendants contend, Haynes has pled a disagreement regarding the pace of his course of treatment.

Karow and Dau additionally argue that to the extent they failed to provide him with medical care, they did so appropriately out of deference to the treatment decisions of Haynes' medical providers.  "Deferring to a medical expert cannot constitute deliberate indifference to a prisoner's serious medical needs."  *Barnes v. Minnesota Dep't of Corr.*, No. CIV. 11-2534 JNE/AJB, 2013 WL 2139522, at *12 (D. Minn. Apr. 8, 2013), *report and recommendation adopted*, No. CIV. 11-2534 JNE/AJB, 2013 WL 2139517 (D. Minn. May 15, 2013), *aff'd*, 559 F. App'x 594 (8th Cir. 2014).  Karow and Dau argue that they are health services administrators for MCF-Faribault and MCF-Stillwater, respectively, and that, as such, they do not directly provide medical care to inmates but rather oversee administrative aspects of the provision of health care at the facilities. Thus, they contend, they were entitled to rely on the medical experts treating Haynes and are insulated from liability under the Eighth Amendment.

After careful review of the pleadings, the Court finds that Haynes' allegations against Karow, while thin, are adequate to allege a claim against her for deliberate indifference to his serious medical needs in violation of the Eighth Amendment.  First, a plaintiff need not be completely denied medical treatment in order to have a claim for deliberate indifference. True, an Eighth Amendment violation will certainly occur where

13

a defendant intentionally and entirely denies medical treatment to a prisoner despite knowledge of the prisoner's serious medical need. *Estelle*, 429 U.S. at 104-05 (noting that "intentionally denying" access to medical care constitutes cruel and unusual punishment). But a prison official may also exhibit deliberate indifference where a knowing "delay in medical treatment . . . posed a substantial risk of serious harm." *Jackson v. Riebold*, 815 F.3d 1114, 1120 (8th Cir. 2016). In such cases, the objective seriousness is measured by "the effect of delay in treatment." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Therefore, that Haynes does not allege he was entirely prevented from obtaining medical treatment does not defeat his claim.

Second, Haynes has pled facts sufficient to support a claim that Karow knowingly contributed to a delay in his medical treatment that detrimentally impacted his medical outcome. Haynes alleges that he contacted Karow on multiple occasions stating he needed medical treatment, that she was aware of the nature and seriousness of his injuries, but that his appeals to her for assistance went unanswered and she refused to treat him while he was at MCF-Faribault. (Am. Compl. ¶¶ 23-26, 29.) These allegations, along with Haynes' general allegations about the extent of his injuries and his assertion that he suffered permanent damage to his leg as a result of the inadequate medical treatment he received, supply a sufficient basis to support his claim for deliberate indifference against Karow.

Lastly, the Court is not persuaded by the argument that Karow is only a health services administrator who does not directly treat inmates, and that any delay to which she may have contributed with regard to Haynes' receipt of needed medical care was

14

attributable to her deference to the treatment decisions of medical providers. Karow points to nothing within the four corners of the Amended Complaint that compels this conclusion. To assess the adequacy of a complaint under Rule 12(b)(6), the Court must consider only the well-pleaded allegations in the complaint, which it must construe in favor of the plaintiff, and may not look to facts outside the complaint. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). In contrast, the decision in defendants' favor in the *Barnes* case, upon which Karow relies in support of her deference argument, was made at the summary judgment stage, when the court had a full factual record upon which to assess whether the defendants' asserted deference to the treatment decisions of others was sufficient to defeat any claim of deliberate indifference. *Barnes*, 2013 WL 2139522, at *12. Therefore, the Court will recommend denying the motion to dismiss Haynes' § 1983 claims against Karow in her individual capacity.

On the other hand, Haynes' Amended Complaint does not adequately allege a factual basis for a plausible § 1983 claim against Dau for deliberate indifference to his serious medical needs. Haynes generally alleges that Dau was responsible for monitoring health services at MCF-Stillwater and ensuring prisoners are receiving adequate medical care. (*Id.* ¶ 11.) But while he alleges conclusorily that she was individually aware of his serious medical needs, the only specific facts he alleges to that effect are that he complained to her multiple times about the co-payments he was being charged, and he sent grievance letters to her superiors at DOC. (*Id.* ¶¶ 30, 36, 38.) These allegations do not by themselves provide an adequate basis for a claim that she had subjective knowledge of his serious medical needs and that she deliberately disregarded them.

15

Accordingly, the Court recommends dismissal of Haynes' individual-capacity claims against Dau.

### 3. Discrimination Claims

The DOC Defendants argue that Haynes' discrimination claims against them should be dismissed under Rule 12(b)(6), because Haynes only offers conclusory statements to support them. The Court agrees. Only two sentences near the end of the Amended Complaint even appear to refer to a claim of discrimination. In one, Haynes alleges that Defendants discriminated against him in violation of the Minnesota Human Rights Act by denying his right to medical treatment. (Am. Compl. ¶ 54.) In the other, he appears to allege that Defendants violated his right to equal protection under the Fourteenth Amendment by subjecting him to confinement conditions that are different from those experienced by similarly situated prisoners. (Am. Compl. ¶ 55.) These conclusory statements provide no facts to show how he was discriminated against, the basis for the discrimination, the injury sustained as a result of the discrimination, or what role any particular Defendant played in the alleged discrimination.[1] "Though pro se complaints are to be construed liberally . . . they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). Further, the Court will not "construct a legal theory" for a pro se plaintiff "that assumes

---

[1] The Court notes that Haynes has moved the Court for leave to amend his complaint for a second time, and that Haynes asserts additional facts pertaining to his discrimination claims in his proposed second amended complaint. (Proposed Second Am. Compl. ¶ 52 [Doc. No. 5217].) However, those newly asserted facts do not pertain to any of the Defendants that are the subject of the instant motion to dismiss, and the Court will address that motion in a separate order.

16

facts that have not been pleaded." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). In short, the Amended Complaint alleges no facts or specifics that would provide the DOC Defendants or the Court with sufficient notice of the grounds upon which Haynes basis his claims of discrimination. Accordingly, the Court will recommend granting the motion to dismiss with regard to claims of discrimination against Iten, Guggisberg, Karow, and Dau.

### III.  Recommendation

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Dismiss [Doc. No. 30] be **GRANTED IN PART** pursuant to Rule 12(b)(1) with respect to claims asserted under 42 U.S.C. § 1983 against Defendants Samuel Iten, Ken Guggisberg, Nola Karow, and Diane Dau in their official capacities;

2. Defendants' Motion to Dismiss [Doc. No. 30] be **GRANTED IN PART** pursuant to Rule 12(b)(6) with respect to claims for gross negligence asserted under 42 U.S.C. § 1983 against Defendants Samuel Iten and Ken Guggisberg in their individual capacities;

3. Defendants' Motion to Dismiss [Doc. No. 30] be **GRANTED IN PART** pursuant to Rule 12(b)(6) with respect to claims asserted under 42 U.S.C. § 1983 for deliberate indifference to serous medical needs against Defendant Diane Dau in her individual capacity;

4. Defendants' Motion to Dismiss [Doc. No. 30] be **GRANTED IN PART**

      pursuant to Rule 12(b)(6) with respect to claims asserted under 42 U.S.C. § 1983 for discrimination and violation of the Minnesota Human Rights Act against Defendants Samuel Iten, Ken Guggisberg, Nola Karow, and Diane Dau in their individual capacities; and

5.     In all other respects, Defendants' Motion to Dismiss be **DENIED IN PART**.

Dated: July 20, 2018            s/ *Hildy Bowbeer*
                                            HILDY BOWBEER
                                            United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to a magistrate judge's findings and recommendations within fourteen days after being served with a copy of the Report and Recommendation. A party may respond to the objections within fourteen days after being served with a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c)(1).