# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Lorenzo C. Haynes,<br><br>                    Plaintiff,<br><br>v.<br><br>Samuel Iten, Ken Guggisberg, Nola Karow,<br>Jeffery Felt, M.D., Diane Du, Brent Plackner,<br>P.A., Daryl Quiram, M.D., *in their individual<br>and official capacities*,<br><br>                    Defendants. | Case No. 17-cv-5217 (DSD/HB)<br><br><br>**REPORT AND<br>RECOMMENDATION** |

Lorenzo C. Haynes, 855 West Seventh Street, Saint Paul, MN 55102, *pro se*

Jeffrey Kent Boman, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1100, Saint Paul, MN 55101, for Nola Karow

Anthony J. Novak and Mark A. Solheim, Larson King, L.L.P., 30 East Seventh Street, Suite 2800, Saint Paul, MN 55101, for Jeffrey Felt, Brent Plackner, and Daryl Quiram

---

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Defendants Daryl Quiram, MD, Brent Plackner, PA, and Jeffrey Felt, MD (collectively, the "Medical Defendants"), and Defendant Nola Karow's respective motions for summary judgment [Doc. Nos. 160, 216] (collectively, "Motions for Summary Judgment") on Plaintiff Lorenzo C. Haynes's Second Amended Complaint [Doc. No. 107]. The motions have been referred to the undersigned pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons set forth below,

the Court recommends that the Motions for Summary Judgment be granted and judgment be entered accordingly.

## I. BACKGROUND

During the times in question, Haynes was an inmate in three Minnesota Correctional Facilities ("MCF"). (Second Am. Compl. [Doc. No. 107 ¶¶ 1, 19, 26].) Haynes's multi-year journey navigating the MCF medical system is documented in Exhibit 1 [Doc. No. 164] attached to the Affidavit of Anthony J. Novak ("Novak Aff."), Exhibits 1 through 5 [Doc Nos. 222, 223, 221-1, 224, 225] attached to the Jeffrey Boman Affidavit ("Boman Aff."), and Haynes's Affidavits and associated exhibits [Doc. Nos. 184 and 239].

### A. Injury and Initial Management

On October 21, 2016, Haynes slipped and fell on a flight of stairs while incarcerated in MCF Saint Cloud. (Second Am. Compl. ¶ 14; Novak Aff Ex. 1 at 39.[1]) That day, Haynes received medical attention for his injured left leg. (Novak Aff. Ex. 1 at 49.) Physical examination revealed tenderness and swelling of the left ankle with no vascular or motor defects. (*Id.*) Medical staff wrapped his ankle with an ACE elastic bandage and Dr. Misah prescribed crutches, an ice wrap, and tramadol for pain relief. (*Id.* at 48, 189.) Vicodin was considered but not prescribed as Haynes had previously reported an adverse reaction to the medication. (*Id.* at 48–49.)

On October 24, 2016, Haynes was seen by Imo Kalla, a certified nurse practitioner. (*Id.* at 39.) On physical examination, she noted that he was non-weightbearing on crutches, his ankle was stabilized with the ACE bandage, and there was tenderness to palpation across

---

[1] When referencing the exhibits, CM/ECF pagination is used.

all aspects of his left lower leg out of proportion to his injury. (*Id.*) Kalla prescribed a controlled ankle movement (CAM) boot to immobilize his ankle joint, authorized wheelchair use over long distances, ordered an x-ray study of his left ankle with follow-up after the films were taken. (*Id.* at 39, 75.) On October 25, 2016, Haynes was seen by Bruce Ver Steeg, MD, who observed moderate ankle swelling, lateral left ankle tenderness, and "contusions of [Haynes's] upper extremity." (Boman Aff. Ex. 1 at 19.) That day, an x-ray study of Haynes's left ankle was preformed which revealed a "fracture of the distal fibula metaphysis . . . [and] a small chip off the posterior malleolus." (Novak Aff. Ex. 1 at 68.)

Haynes was seen again by Dr. Ver Steeg on October 28, 2016, where back tenderness was first noted. (Boman Aff. Ex. 1 at 18.) Tramadol was discontinued and Haynes was started on an opioid narcotic, Norco, to help control his pain. (*Id.*) Haynes expressed interest in a cast for his ankle and Dr. Ver Steeg recommended follow-up to assess when a cast would be appropriate. (*Id.*). Haynes was again assessed by Dr. Ver Steeg on November 2, 2016, where physical examination revealed paralumbar tenderness. (Novak Aff. Ex. 1 at 38.) Dr. Ver Steeg added meloxicam (another pain reliever) and omeprazole (to proactively prevent the gastrointestinal side effects of meloxicam) to Haynes's regimen. (*Id.*). An x-ray study of Haynes's lumbar spine was within the normal range. (*Id.* at 67.) Dr. Ver Steeg saw Haynes once again on November 10, 2016, and further tailored his medications. (Boman Aff. Ex. 1 at 19.) At this visit, Dr. Ver Steeg recommended the use of Tylenol instead of Norco and continuing meloxicam. (*Id.*) Dr. Ver Steeg consistently recommended future follow-up to assess healing after Haynes transferred facilities. (*Id.* at 17–20.)

**B.    Medical Management During Haynes's Convalescence**

Haynes was transferred to MCF Faribault on November 15, 2016.  (Second Am. Compl. ¶ 19.)  All of his orthopedic devices were reordered that day.  (Novak Aff. Ex. 1 at 192.)  On November 29, 2016, Haynes followed up with Dr. Felt.  (*Id.* at 37.)  During that visit, Dr. Felt ordered a second x-ray study of Haynes's left ankle to assess his healing progress and recommended a follow-up appointment after Haynes was transferred to MCF-Stillwater.  (*Id.*)  Left ankle radiographs were taken on November 29, 2016, showing a "healing fracture of [the] distal fibula."  (*Id.* at 66.)

Haynes was transferred to MCF Stillwater on December 22, 2016.  (Second Am. Compl. ¶ 19.[2])  On December 30, 2016, Haynes was assessed by Plackner, a physician's assistant at MCF Stillwater, who exchanged Haynes's CAM boot for an "air cast."  (Novak Aff. Ex. 1 at 37.)  Plackner recommended exercises to increase ankle joint range of motion, and progressive weight-bearing with the cast.  (*Id.*).

Between the date of his transfer to MCF Stillwater and his release from prison on October 15, 2018, Haynes was seen by Plackner, Quiram and three other physicians twelve additional times.  (*Id.* at 25–36.)  During that time, his medications, assistive devices and activity restrictions were continually modified based upon his symptoms.  (*Id.*)  For instance, Haynes was prescribed a second trial of meloxicam as well as Indocin, Tylenol, two prednisone bursts,[3] and Flexeril (both scheduled and "as needed") to treat his pain.  (*Id.* at

---

[2]  The Court did not receive Haynes's prison transfer records so it will rely on the dates provided in Haynes's Second Amended Complaint.  The transfer dates are not disputed by the parties.

[3]  Haynes was prescribed prednisone twice using a "burst and taper" pattern.  (*Id.* at 33.) Using burst and taper, the steroid is given first at a high dose for a short period of time, and

25–36.)  During that time Haynes consistently complained of back and ankle pain, requested changes in his pain medication (e.g. adding a gabapentin prescription), as well as changing accommodations for his medical condition.  (*Id.* at 31, 40–49.)  Haynes also complained of a variety of side effects resulting from the first prednisone burst including blisters, drowsiness, pruritus, dysuria, tremulousness and chest tightness.  (*Id.* at 42, 44.)  Those symptoms could not be objectively verified, however.  (*Id.* at 42.)  Haynes nevertheless voluntarily assented to continuing prednisone and trying a second prednisone burst.  (*Id.* at 30, 42.)

Haynes received two additional x-ray studies of his injured ankle (revealing further evidence of healing), *see* (*id.* at 63, 65), and two x-ray studies of his lumbar spine (both without abnormalities).  (*Id.* at 62, 64.)  His x-ray films were analyzed by five radiologists.  (*Id.* at 62–68.)  The radiology reports were each viewed, remarked upon and signed by Haynes's primary care provider.  (*Id.*)  Despite negative results on his lumbar spine x-rays, Haynes petitioned his care providers for a magnetic resonance image ("MRI") scan, a computed tomography scan, or an electromyogram of his back to detect occult "soft tissue damage."  (*Id.* at 45.)  He did not receive additional diagnostic imaging.

Haynes was seen six times by physical therapists Luke DeHaan and Jan Rygh who recommended "home" exercises to increase the range of motion of his ankle and spine, and to strengthen his core muscles to help with his back pain.  (*Id.* at 50–52, 198–99.)  Both noted that his back pain may be related to weight gain and deconditioning.  (*Id.*)  DeHaan

---

then the dose is slowly and incrementally decreased over a long period of time.  Haynes was prescribed two steroid bursts: first in March 2017, and second in February 2018—at a higher dose.  (*Id.* at 33, 36, 40, 42, 50.)  The lengths of the taper periods are not recorded but it appears that Haynes did not complete the second steroid trial.  (*Id.*)

also observed that Haynes was not compliant with home exercises for his back, and declined physical exam tests.  (*Id.* at 50–51.)

During each doctor's visit, objective evidence of healing was reported.  (*Id.* at 25–36, 40–52.)  Haynes consistently had normal neurological exams (e.g. negative "straight leg test," "no radiculopathy," and normal motor power) and normal vascular exams (e.g. warm extremities, palpable pedal pulses, and brisk capillary refill).  (*Id.*)  When Haynes was released from prison, his physical exam revealed a normal gait requiring no assistive devices. (*Id.* at 25, 50, 99.)

## C.    Concerns Over Copayments and Follow-Up Appointments

Over the course of his convalescence, Hayne's repeatedly voiced his concerns about the quality, frequency, and availability of medical care for his injuries via intra-prison communiques called "KITE forms."  (Novak Aff. Ex. 1 at 135–70.)  He was especially concerned that if he utilized "sick call" (the normal procedure for requesting medical services at MCF), he would incur additional copayment charges.  (*See, e.g.*, *id.* at 155.)  Haynes sent at least 24 KITE forms following his injury.  (*Id.* at 135–70.)  All but six of those KITE forms received responses, many within one day, the vast majority within one week.  (*Id.*)  Haynes's KITE forms were consistently returned with instructions to use the "sick call" procedure.  (*See, e.g.*, *id.* at 160–61.)  From his first KITE form to his last, Haynes was seen by a physician or physician's assistant seventeen times.  (*Id.* at 25–36).

On December 15, 2016, Haynes lodged a grievance concerning Karow's alleged non-responses to his KITE forms and its impact on his access to medical care.  (Second Am. Compl. ¶ 23.)  Before there was an institutional response to that grievance, Haynes lodged a second grievance on December 20, 2016, regarding copayments.  (*Id.* ¶ 25.)  On January 1,

2017, Karow responded to his second grievance—reviewing his medical record, care plan, and treatment plan; dismissing the complaint; and instructing him to use the "sick call" procedure for further follow-up.  (Novak Aff. Ex. 1 at 158.)  Haynes sent a letter concerning copayment charges on April 10, 2017, and received a response from Tina Sneen, Associate Director of Nursing on May 4, 2017, assuring him that copayments related to his injury would be refunded and that future copayments would not be charged for doctor visits related to his prior injury through the "sick call" process.  (*Id.* at 16.)  His copayment refund was approved on April 26, 2017.  (*Id.* at 46.)  In the period of time in which Haynes was disputing copayment charges, he was seen by a physician or physician's assistant three times. (*Id.* at 36–37.)

### D.     The Second Amended Complaint and Motions for Summary Judgment

Early in this litigation, this Court allowed Haynes to proceed *in forma pauperis*, and to amend his complaint.  *See* ([Doc. Nos. 9 and 105].)  Following additional motion practice, Haynes's claims against Department of Corrections ("DOC") officials were dismissed by the Court, *see* ([Doc. Nos. 98 and 104]),[4] and his motion to voluntarily dismiss without prejudice claims of medical malpractice was granted.  *See* ([Doc. Nos. 150, 176].)  Thus, the only federal claim remaining against the Defendants is Haynes's Eighth Amendment claim concerning his medical treatment while incarcerated.[5]  (Second Am. Compl. ¶¶ 45–47.) Reading Haynes's complaint liberally, he alleges that the Medical Defendants were

---

[4]  This also resulted in dismissal of Haynes's discrimination claim under Minnesota Statutes § 363A.

[5]  In various places in the operative pleading, Haynes also asserts violations of Minnesota state law under Article 1, § 5 of the Minnesota Constitution in connection with the alleged deliberate indifference.  *See, e.g.*, (Second Am. Compl. ¶ 43.)

deliberately indifferent to his serious medical needs due to inadequate treatment of his left ankle pain and back pain. Haynes also suggests Karow was deliberately indifferent to his serious medical needs because she failed to answer his KITE form requests and failed to schedule automatic follow-up appointments, thus delaying his care and resulting in a worse prognosis. (*Id.* ¶¶ 33–34.) Haynes contends that due to inadequate medical care, his leg will "never be 100% again" and that he now walks with a permanent limp and suffers from chronic back pain. (Haynes's Resp. to Karow's Mot. [Doc. No. 240 at 74].)

In support of her motion for summary judgment, Karow argues that summary judgment should be granted because the medical care Haynes received does not give rise to an Eighth Amendment violation. (Karow Mem. in Supp. [Doc. No. 219 at 11–13].) Further, she contends, in her capacity as acting Health Services Administrator and Associate Director of Nursing, she was not involved in Haynes's clinical care. (*Id.* at 8.) Because of her distance from Haynes's care, Karow argues there is no evidence that she "subjectively perceived and disregarded a substantial risk to [Haynes]." (*Id.* at 14.) Karow also challenges Haynes's claim that her actions delayed his treatment, arguing that Haynes has proffered no "verifying medical evidence" of the detrimental effect of any delay on his prognosis. (*Id.* at 14–15.)

The Medical Defendants make three arguments in support of their motion for summary judgment. (Medical Defs.' Mem. in Supp. [Doc. No. 161].) First, they contend that Haynes did not provide evidence that his injuries were the type of serious medical needs required to "support a claim under the Eighth Amendment." (*Id.* at 7.) Second, they argue the record does not suggest that Haynes's injury was "acute or escalating." (*Id.* at 7–8.) Third, the Medical Defendants assert that there is no evidence of a "sufficiently culpable

state of mind" to support a finding that they deliberately disregarded Haynes's serious medical needs. (*Id.* at 8.) They point to "ongoing and proactive" treatment plans and coordinated care, aimed at Haynes's back and ankle pain. (*Id.*) This level of care, they contend, cannot be "so inappropriate that it demonstrates intentional mistreatment." (*Id.* (internal quotation marks omitted).)

In his responses to the respective dispositive motions, Haynes unsurprisingly contests each argument made by Defendants and vehemently asserts that genuine and material disputes of fact can be found in the record. Each salient element of his response will be discussed below.

## III.    DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis omitted). "[A] dispute about a material fact is genuine if a reasonable jury could return a verdict in favor of either party." *White v. Farrier*, 849 F.2d 322, 325 (8th Cir. 1988). The court views the evidence and makes all reasonable inferences in favor of the nonmoving party. *Sallis v. Univ. of Minn.*, 408 F.3d 470, 474 (8th Cir. 2005).

To support its argument, the moving party must cite to record materials or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P.

56(c)(1)(B).  "Once the moving party has made and supported their motion, the nonmoving party must proffer admissible evidence demonstrating a genuine dispute as to a material fact."  *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011).  With that standard in mind, the Court must examine whether Haynes has demonstrated a genuine issue of material fact such that a reasonable jury could return a verdict in his favor.

### A.    Alleged Eighth Amendment Violations

"It has long been established that prison officials violate a prisoner's Eighth Amendment right to be free from cruel and unusual punishment when the officials are deliberately indifferent to the prisoner's serious medical needs."  *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

### 1.    Serious Medical Need

For there to be a violation under the Eighth Amendment, there must be a serious medical need.  *Boyd*, 47 F.3d at 968.  The Eighth Circuit defines a serious medical need as "one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488 (8th Cir. 2008) (quoting *Vaughn v. Greene County*, 438 F.3d 845, 851 (8th Cir. 2006)).  Alternatively, "a serious medical need [is] one that has been diagnosed by a physician as requiring treatment."  *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (quotation omitted).

In the instant case, Haynes does not challenge the treatment he received immediately following his injury at MCF Saint Cloud.  Rather, his claims revolve around the treatment that he received while convalescing at MCF Faribault and MCF Stillwater.  Haynes contends that a wheelchair-bound person in a CAM boot is clearly in need of medical assistance. (Haynes's Resp. to Medical Defs.' Mot. [Doc. No. 182 at 7–8].)  There can be no question

that a diagnosed broken fibula is a serious medical need.  *Cf.  Camberos*, 73 F.3d at 176.

That said, there is also no question that he received treatment for that condition.  A more

difficult question is whether, as his treatment progressed, additional or continuing serious

medical needs were revealed (such as, for example, an injury to his back).  However, the

Court does not need to decide that question here because regardless of how his medical needs

during the course of his recovery are characterized, Haynes's Eighth Amendment claim still

fails because he cannot demonstrate that any of the Defendants were deliberately indifferent

to those medical needs.

### 2.    Deliberate Indifference

The standard for deliberate indifference under the Eighth Amendment "entails

something more than mere negligence, [and] . . . something less than acts or omissions for

the very purpose of causing harm or with knowledge that harm will result."  *Farmer v.

Brennan*, 511 U.S. 825, 835 (1994).  Deliberate indifference "is a stringent standard of fault,

requiring proof that a municipal actor disregarded a known or obvious consequence of his

action."  *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).  To prevail on his

claim, Haynes "must demonstrate (1) that [he] suffered objectively serious medical needs

and (2) that the prison officials actually knew of but deliberately disregarded those needs."

*Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).  Thus, the standard is akin to

"criminal recklessness."  *Olson v. Bloomberg*, 339 F.3d 730, 736 (8th Cir. 2003).

Haynes bases his deliberate indifference claim against the Medical Defendants on

four principal claims about the medical treatment of his back and left ankle pain.  First, he

claims the pain medications he was prescribed were not adequate to treat his ongoing back

and ankle pain.  (Second Am. Compl. ¶ 37.)  Specifically, he complains that the Medical

Defendants prescribed increased doses of Indocin and prednisone rather than switching to another drug. (Haynes's Resp. to Medical Defs.' Mot. at 33.) Haynes argues that Indocin and prednisone were not the "proper" medication to treat his back pain and a later Flexeril prescription was more efficacious. (*Id.*)

Second, Haynes contends the Medical Defendants failed to order an MRI to diagnose occult "soft tissue damage" to his lumbar back. (Haynes's Resp. to Medical Defs.' Mot. at 16–22, 33–34, 40.)

Third, he claims the Medical Defendants prescribed a second prednisone burst trial despite the fact that Haynes had reported (albeit unverified) side effects of blisters, drowsiness, pruritus, dysuria, tremulousness and chest tightness. (*Id.*; Novak Aff. Ex. 1 at 42, 44.)

Fourth, Haynes argues the Medical Defendants failed to diagnose his back pain as "chronic back pain" or "myofascial injury" in a timely manner. (*Id.* at 34–36). Together, he claims that these alleged medical errors amount to treatment "'so grossly incompetent, inadequate, or excessive as to shock the conscience.'" (*Id.* at 17–18 (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).)

The United States Supreme Court has pointed out that "inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 105–06 (internal quotation marks omitted); *see also Dulany*, 132 F.3d at 1239. Further, "inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany*, 132 F.3d at 1239 (citing *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996)). Given the extensive evidentiary

record before the Court concerning the diagnostic and treatment modalities that were brought to bear on Haynes's injury, and particularly in the absence of competent medical evidence of the inadequacy of those efforts, Haynes's complaints that he did not receive his preferred pain medication, diagnosis, or diagnostic imaging modality are, at most, differences of opinion regarding his treatment plan, not evidence of a deliberate indifference to his serious medical needs. Stated differently, drawing all reasonable inferences in Haynes's favor, the record does not show a lack of care rising to the level of criminal recklessness required to support a finding that the Defendants were deliberately indifferent to Haynes's medical needs with regard to his left ankle pain and back pain.

Alternatively, Haynes argues that the Medical Defendants' treatment plans "negligent[ly] . . . depart[ed] from the standard[] of care." (Haynes's Resp. to Medical Defs.' Mot. at 27, 30.) But this allegation—even if it were supported by the evidence—describes a tort claim in negligence or medical malpractice (a claim that Haynes withdrew), not a constitutional violation. On the contrary, the Supreme Court has found that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Martinson v. Leason*, 22 F. Supp. 3d 952, 960 (D. Minn. 2014) (Kyle, J.) (stating "[t]he plaintiff must show more than negligence, more even than gross negligence" (internal quotation marks omitted)).

### 3.    Delay in Treatment

In some situations, a delay in treatment may be used to demonstrate deliberate indifference. *See Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016). Haynes contends that Karow's failure to address errant copayment charges as well as her failure to schedule automatic follow-up appointments delayed his medical care. (Haynes's Resp. to Karow's

Mot. at 40–44.)  He also claims that Karow delayed delivery of prescribed ice and blankets following his transfer to MCF Fairibault.  (*Id.* at 5–6, 23.)  Haynes points to cases in various circuits finding that even short periods of untreated pain can constitute deliberate indifference.  (Haynes's Resp. to Medical Defs.' Mot. at 12–13.)  But the Eighth Circuit has held that even where there has been an alleged delay in treatment, "[a] prisoner . . . must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis."  *Holden*, 663 F.3d at 342 (internal quotation marks omitted).  Haynes proffers no such evidence.

Haynes also argues that the pain and discomfort from his back and ankle injuries constituted an escalating situation that required speedy treatment under the Eighth Amendment.  However, pain and discomfort alone without objective evidence of an accelerating or exigent ailment are not sufficient to establish an acute or escalating situation. *Compare Holden*, 663 F.3d 336 (finding failure to promptly extract a painful tooth in the absence of bleeding or swelling did not rise to the level of deliberate indifference), *and Reece v. Groose*, 60 F.3d 487, 491–92 (8th Cir. 1995) (holding that a "serious burn" was not acute or escalating in the context of the Eighth Amendment), *with Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (finding that a defendant may have been deliberately indifferent when dental care was delayed despite evidence of "extreme pain from loose and infected teeth, which caused blood to seep from his gums, swelling, and difficulty sleeping and eating.").

Here, Haynes complained that his left ankle "feels dislocated" or "at times . . . still hurts when [he] move[s] it."  (Novak Aff. Ex. 1 at 161, 168.)  However, unlike *Hartsfield*, there were no objective medical signs to indicate an acute or escalating situation requiring

speedy medical care: no evidence of radiculopathy, no loss of motor power, no loss of sensation, and intact pulses. (*Id.* at 25–36, 40–52.) On the contrary, Haynes's medical records indicate that his medical care providers observed continued healing and decreased acuity: improving tenderness to palpation, reduced swelling, radiographic evidence of fracture mending, and functional improvements. (*Id.* at 25–36, 63, 65.) Haynes does not contest these medical findings; rather he relies solely on his subjective complaints of pain and discomfort to support his claim that his medical condition was acute and escalating. This evidence is insufficient as a matter of law to support a finding that any delay in his medical care constituted deliberate indifference. *See, e.g.*, *Prosser v. Nagaldinne*, 927 F. Supp. 2d 708, 734–35 (E.D. Mo. 2013) (finding that a limp, subjective complaints, and self-diagnosis of "foot drop" are not sufficient evidence to establish deliberate indifference); *Kunze v. Diehl*, 345 F. Supp. 2d 1031, 1034 (D.N.D 2004) (finding patient's subjective complaints and self-diagnosis of cancer, after receiving many physical exams and medical tests, were insufficient to sustain an Eighth Amendment claim).

Finally, Haynes claims that because of the delays in his medical care, he now walks with a limp and has chronic back pain. (Haynes's Resp. to Karow's Mot. at 74.) But an unfavorable outcome does not establish deliberate indifference. Even if one assumes, *arguendo,* that there was an unjustifiable delay in providing certain care, the Eighth Circuit requires that the record contain "verifying medical evidence" that the delay actually resulted in a worse prognosis. *Holden*, 663 F.3d 336, 342. Even medical testimony that "earlier diagnosis and treatment *may* have made a significant difference" does not meet this evidentiary burden. *Brewer v. Graves*, 152 F. App'x 548, 549 (8th Cir. 2005) (emphasis added). Haynes provides no "verifying medical evidence" to substantiate his claim. He only

15

reiterates his belief that delays in care exacerbated his leg and back injuries. These bare, unsupported assertions are not sufficient.[6] *See Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990) ("[W]e cannot conclude that a one-month delay in providing treatment for leg pain clearly amounted to deliberate indifference to a serious medical need."); *see also, Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (*citing Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1190 (11th Cir. 1994) ("[A] bare, unsupported assertion" does not demonstrate that a "delay exacerbated [the plaintiff's] medical condition.")). Put simply, Haynes does not identify or support with competent evidence any specific medical response that, had it been provided, or provided more quickly, would have materially affected his prognosis, let alone demonstrate that the failure to provide that response was deliberately indifferent.

Accordingly, the Court concludes that no trier of fact could reasonably find that either Karow's or the Medical Defendants' response to Haynes's serious medical condition violated his rights under the Eighth Amendment, and they are therefore entitled to summary judgment on his claims.[7]

---

[6] The Court received a supplemental affidavit and exhibit from Haynes on July 9, 2019. *See* (Doc. Nos. 256, 257). The exhibit is from a medical provider who recommends Haynes undergo surgery to address instability in Haynes's injured ankle. The Court sympathizes with Haynes as he continues to struggle with the recovery from this injury. But as discussed elsewhere in this Report and Recommendation, there is insufficient evidence in the record—even if this belated submission is considered—to show that the Defendants were deliberately indifferent to his medical needs. That the outcome has been unsatisfactory, without more, is insufficient to sustain a violation under the Eighth Amendment. *See, e.g.*, *Taylor v. Norris*, 36 F. App'x 228, 229 (8th Cir. 2002).

[7] Because the Court concludes that no trier of fact could find that Defendants' treatment of Haynes's serious medical condition violated the Eighth Amendment, the Court does not address Defendants' other arguments in support of their motions. *See, e.g.*, (Karow's Mem. in Supp. at 14–19 (arguing that Karow did not subjectively know of defects in Haynes's care, that the doctrine of qualified immunity immunizes her from suit, and that § 1983 does not

**B.**    **Haynes's Remaining State Law Claims**

Haynes has also alleged state law claims arising under Article I, § 5 of the Minnesota Constitution.  (Second Am. Compl. ¶¶ 43, 47.)  If this Report and Recommendation is adopted, all of Haynes's federal claims will be dispensed with on summary judgment. However, the Court has the option to exercise supplemental jurisdiction over state claims even when there are no "claims over which it has original jurisdiction."  *See* 28 U.S.C. § 1367(c)(3).  Because this action has pended for nearly twenty months and has gone through discovery and dispositive motion practice, exercising supplemental jurisdiction and resolving Haynes's state claims is in the best interest of "judicial economy, convenience and fairness to [the] litigants."  *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  Accordingly, the Court turns now to whether those claims can survive the Defendants' motions for summary judgment.

"[T]here is no private right of action for compensation or damages under the Minnesota Constitution for violation of the rights guaranteed under the Minnesota Constitution."  *Holscher v. Mille Lacs Cty.*, 924 F. Supp. 2d 1044, 1053 (D. Minn. 2013). That is, "unlike []§ 1983, Minnesota has no statutory scheme providing for private actions based upon violations of the Minnesota Constitution."  *Fearing v. St. Paul Police Dep't*, No. 02-4744 ADM/JSM, 2005 WL 914733, at *5 (D. Minn. Apr. 20, 2005) (Montgomery, J.).  In addition, absent "a remedy for damages . . . Minnesota does not recognize a tort for deprivation of due process."  *Bird v. State, Dep't of Pub. Safety*, 375 N.W.2d 36, 40 (Minn. Ct. App. 1985).  For these reasons, Haynes does not have a cognizable claim for damages

---

allow claims of vicarious liability); Medical Defs.' Mem. in Supp. at 7–8 (arguing that they did not subjectively perceive or disregard Haynes's alleged serious medical needs).)

under Article 1, § 5 of the Minnesota Constitution, nor can Haynes assert a valid claim for damages stemming from his alleged deprivation of due process.  Consequently, the Court recommends that summary judgment be granted in favor of all Defendants on Haynes's attempted state law claims.

## IV.    RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Defendants' Daryl Quiram, Brent Plackner, and Jeffrey Felt's Motion for Summary Judgment [Doc. No. 160] be **GRANTED**;

2.    Defendant Nola Karow's Motion for Summary Judgment [Doc. No. 216] be **GRANTED**; and

3.    Judgment be entered in favor of Defendants.


Dated:  July 19, 2019                         _s/ Hildy Bowbeer_____
                                                           HILDY BOWBEER
                                                           United States Magistrate Judge


## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).